Matthew L. Rollin (SBN 332631)
**SRIPLAW, P.A.**
8730 Wilshire Boulevard
Suite 350
Beverly Hills, California 90211
323.452.5600 – Telephone
561.404.4353 – Facsimile
matthew.rollin@sriplaw.com

Counsel for Plaintiff
Viral DRM LLC

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| VIRAL DRM LLC, <br><br> Plaintiff, <br><br> v. <br><br> ANTON SHUBSTORSKY, <br><br> Defendant. | CASE NO.: 3:24-cv-00733-JSC <br><br> **DECLARATION OF BRANDON CLEMENT IN SUPPORT OF MOTION FOR FINAL DEFAULT JUDGMENT** |

I, Brandon Clement, declare and say:

1.  I am a principal and one of the owners of Viral DRM LLC. Viral DRM is an Alabama limited liability company that helps clients protect the copyright to video content, especially content depicting extreme weather events.

2.  Viral DRM represents hundreds of professional videographers who have been victim of widespread piracy. Collectively our clients own millions of minutes of highly sought-after and valuable content. Collectively our content is routinely licensed by major media outlets, featured on movies, television shows, documentaries and through social media channels.

3. At least some of the videos in this case have been licensed by one or many media companies. Our clients also have valuable social media channels with over 10 million combined subscribers/followers. With total viewership in the billions.

4. I am a storm chaser specializing in shooting viral video for broadcast and distribution. I have been chasing storms for 29 years and have spent the last decade as a full time professional.

5. I have captured many tornadoes, hurricanes and other severe weather events including the largest tornado ever recorded, the worst tornado outbreak in history, every landfalling US Hurricane over the past decade, volcanic eruptions, the world's largest wave ever surfed, some of the worst floods in US history and many other extreme weather events.

6. My YouTube channel has over 115,000 subscribers and hundreds of millions of views. Viral DRM represents my work and the work of numerous other award-winning videographers and storm chasers who make their living from their creativity and the risks they take shooting extreme events around the globe.

7. YouTube channels and Facebook pages that display our content are extremely popular destinations for viewers seeking extreme weather event footage. My experience operating these channels/pages has taught me how these outlets operate and pay channel operators for their content. My experience has also informed my efforts to combat the widespread video piracy that my companies and its creators fall victim to on a daily basis.

8. The works at issue in this case are listed in **Exhibit 1**. I am familiar with each and every work listed in **Exhibit 1**. All the works are original works of authorship created by me or by one of the other authors/creators listed in **Exhibit 1**. All the works are exclusively licensed to Viral DRM for distribution and syndication pursuant to written agreements that provide Viral DRM with the necessary rights to sue for the infringements at issue in this case. Many of the works at issue in this case listed in **Exhibit 1** contained watermarks and embedded metadata copyright management information identifying them as the property of WXchasing, Viral DRM or the video's creators.

9. Based on the responses to the subpoenas and TRO in this case from YouTube, I know the true identity of the defendant to be ANTON SHUBSTORSKY.

10.     All the works at issue in this case are valuable for displaying on YouTube and Facebook. All the works at issue show dramatic weather events that make for compelling and interesting viewing by interested viewers worldwide. All the works at issue also can be used to earn money from advertising on YouTube. That is why the defendant ANTON SHUBSTORSKY copied the works.

11.     My company and those of Viral DRM clients' YouTube channel and other social media pages display videos of extreme weather events that are frequently copied, downloaded, and reuploaded by infringers. We are a popular and frequent source of footage of weather events that cannot be obtained elsewhere. This makes us a frequent target for infringers and pirates. As a result, my experience has informed my efforts to combat the widespread video piracy that my companies and its creators fall victim to on a daily basis.

12.     ANTON SHUBSTORSKY had access to and downloaded Viral DRM's clients copyrighted works from YouTube channels or Facebook pages online. It is easy to download videos from YouTube and Facebook; there are numerous free and low-cost tools available online that a downloader can use to copy and download video content. Just search "download YouTube videos" on Google. These tools are easy to find and they make copyright infringement easy and frictionless for video pirates.

13.     Once downloaded, video pirates can edit pirated videos easily using online and free video editing tools that can remove or crop out proprietary watermarks and metadata that we place in our videos to identify and associate them with WXChasing, Viral DRM, Live Storms Media, or our creators. After editing the pirated videos, video pirates can combine our videos with other video content that they either stole from others or created themselves and then reupload the resulting video to their YouTube channels and enabled advertising on them to earn monetization revenue.

14.     Unauthorized YouTube uploads of copyright infringing videos have significantly harmed us by undermining our revenue streams, diluting our brand and reputation, fragmenting our audience, compromising our creative control, and imposing legal complexities and costs.

15.     The ability for Defendant to reproduce, distribute and display the copyrighted Work for its own commercial benefit without compensation greatly impairs the market value of the

1 copyrighted Works since other potential clients will not want to license these Works as they are
2 being used across the internet for free.

3     16.    Based upon my review of the videos uploaded to YouTube by the defendant ANTON
4 SHUBSTORSKY, as detailed in **Exhibit 1**, the defendant committed the following offenses:

## COPYRIGHT INFRINGEMENT

6     17.    ANTON SHUBSTORSKY committed copyright infringement of nine of Viral
7 DRM's videos, six of which are registered videos.

8     18.    Attached as **Exhibit 1** is a schedule of the works at issue in this case that have been
9 registered for copyright showing the registration number, the effective date of the registration, the
10 type of work, the title of the work, the year the work was completed, and the author of the work.

11     19.    Viral DRM is the exclusive licensee of all the works listed on **Exhibit 1** with full
12 rights to sue for infringement and collect damages from the defendant.

13     20.    Copies of the certificates were filed at **ECF 28-1**.

14     21.    The defendant copied, performed, and created derivative works of the Works listed in
15 **Exhibit 1** when they created, uploaded, and broadcasted the videos that are the subject of this action
16 on their YouTube channel.

17     22.    The chart shown in **Exhibit 1** contains a list of the titles of plaintiff's works that the
18 defendant infringed, the copyright registration number, the Uniform Resource Locator (URL) where
19 the defendant performed, broadcasted, and uploaded the infringing videos, and whether copyright
20 management information (CMI) was removed by the defendant in the uploaded video(s).

21     23.    I reviewed all the defendant's infringing videos and determined that the defendant
22 ANTON SHUBSTORSKY copied, performed, and created derivative works of Viral DRM's videos
23 listed on **Exhibit 1**.

## CMI VIOLATIONS

25     24.    I am personally familiar with the watermarking that is placed on plaintiff's videos.
26     25.    I am personally familiar with the claims to ownership of copyright the defendant
27 made on their YouTube channel where they uploaded videos that violated Viral DRM's copyrights.
28

26. I reviewed all the defendant's infringing videos and none of the watermarks were contained in those videos shown on **Exhibit 1**.

27. I reviewed all the defendant's infringing videos shown on **Exhibit 1**, and the defendant either removed or attached copyright management information to them that asserted rights that he did not have, and that information was false.

28. Based on my review of the videos uploaded to YouTube by the defendant as detailed in **Exhibit 1**, I determined that ANTON SHUBSTORSKY committed twelve CMI violations.

## BAD FAITH COUNTERNOTICE VIOLATIONS

29. I reviewed all the counternotices the defendant sent in response to Viral DRM's DMCA notices. The twelve counternotices are located at **ECF 28-2**. I determined from reviewing the counternotices that ANTON SHUBSTORSKY submitted nine false and misleading counternotices that misrepresented the identities of the counternotificants and made false claims about their rights to use plaintiff's videos.

30. Viral DRM incurred costs and expenses as a result of these counternotices. Most significantly, Viral DRM incurred the expense of my time and the time of other employees who needed to review the defendant's YouTube videos and then submit the DMCA notices to get them removed. Viral DRM dedicates a team of people to this task. We need to prepare extensive documentation to support our claims, submit the claims, follow up with the claims, inform our attorneys of our claims, and participate in litigation concerning those claims. I have determined that for each counternotice the cost of the time that Viral DRM employees must devote to this process is $2,500 per counternotice.

31. The defendant ANTON SHUBSTORSKY never sought a license to use Viral DRM's copyright works. Nonetheless, I was able to calculate with reasonable certainty the amount that Viral DRM would have charged to license the video that the defendant used on their YouTube channel. I then considered certain factors explained to me by my attorneys in order to arrive at a reasonable licensing fee to use as a basis for comparison against the statutory damages amounts below. Viral DRM's works are all scarce and of the highest quality so I computed the licensing fees using 5x

multipliers for both scarcity and quality factors. The amount of the reasonable licensing fee I arrived at was more than the statutory damage amount listed below.

32.  Based on the foregoing, the plaintiff seeks a total of $1,230,000.00 in statutory damages from the defendant ANTON SHUBSTORSKY.

I declare under perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 27, 2024



BRANDON CLEMENT