UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRAL DRM, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>ANTON SHUBSTORSKY,<br><br>  Defendant. | Case No. 3:24-cv-00733-JSC<br><br>**ORDER TO SHOW CAUSE REGARDING VIRAL DRM'S STANDING** |

Plaintiff Viral DRM LLC brings copyright infringement claims against Defendant Anton Shubstorsky alleging he downloaded and copied Viral DRM's copyrighted materials from YouTube, and then re-uploaded infringing versions of its copyrighted media content to his YouTube channel WAHR. This is one of several related copyright infringement actions. *See* Case Nos. 23-4300, 23-5045, 23-5594, 23-5977, 23-6261, 23-6598, 24-731, 24-739, 24-746, 24-747. After Defendant failed to respond to the Complaint, Viral DRM moved for entry of default, which the Clerk granted, and now moves for entry of default judgment. (Dkt. Nos. 25, 31.[1]) At the hearing on Viral DRM's motion for default judgment, the Court raised an issue regarding Viral DRM's standing to bring the copyright infringement claims and directed Viral DRM to submit a copy of its license with the copyright holders. (Dkt. No. 38.) Having considered the supplemental submission, the Court ORDERS Viral DRM to SHOW CAUSE as to its standing to enforce the copyrights at issue.

Section 501(b) of the Copyright Act specifies who has standing to sue for infringement: "The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

[registration] requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Section 106 sets forth an "exhaustive list" of those exclusive rights. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 887 (9th Cir. 2005) (en banc) (citing 17 U.S.C. § 106). These include:

> the rights "to do and to authorize" others to do six things with the copyrighted work: to reproduce the work, to prepare derivative works based upon the work, to distribute copies of the work, to perform the work publicly, to display the work publicly, and to record and perform the work by means of an audio transmission.

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1002 (9th Cir. 2015) (quoting 17 U.S.C. § 106). In *Minden*, the Ninth Circuit held "either an *assignment* (which transfers legal title to the transferee) or an *exclusive license* (which transfers an exclusive permission to use to the transferee) qualifies as a 'transfer' of a right in a copyright for the purposes of the Act." *Minden*, 795 F.3d at 1003 (emphasis in original). In contrast, a "'nonexclusive license' does not constitute a 'transfer of copyright ownership' and therefore cannot confer standing to assert an infringement claim." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 983 (9th Cir. 2017) (citing 17 U.S.C. § 101).

Viral DRM's other copyright-based claims for violation of 17 U.S.C. § 512(f) and 17 U.S.C. §§ 1201, 1202, respectively, also have limitations on who may bring a claim. *See* 17 U.S.C. § 512(f) (authorizing claims for damages for material misrepresentations by the "copyright owner or copyright owner's authorized licensee"); 17 U.S.C. § 1203 ("Any person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation).

This action is brought by Viral DRM "a syndicator of award-winning videographic content created by talented videographers." (Dkt. No. 1 at ¶ 14.) According to the Complaint, "Viral DRM was the exclusive licensee of the Works at issue in this case" and "Viral DRM registered the Works at issue in this case with the Register of Copyrights pursuant to 17 U.S.C. § 411(a)." (*Id*. at ¶¶ 38, 39.) The Registration Certificates attached to the Complaint, however, show that five of the works at issue are registered to "Michael Brandon Clement" and the other work is registered to "Michael Brandon Clement" and "Jonathan Petramala" jointly. (Dkt. No. 28-1.) According to

1  Mr. Clement's declaration in support of the motion for default judgment, he is a principal and one
2  of the owners of Viral DRM LLC. (Dkt. No. 31-2 at ¶ 1.) Mr. Clement attests "[a]ll the works are
3  exclusively licensed to Viral DRM for distribution and syndication pursuant to written agreements
4  that provide Viral DRM with the necessary rights to sue for the infringements at issue in this
5  case." (*Id.* at ¶ 8.)
6  In response to the Court's inquiry at the hearing, Viral DRM filed its "Exclusive Copyright
7  Management Agreement" purportedly with the videographer holding the copyrights.[2] (Dkt. No.
8  39-3.) Not so. As explained above, the copyright registrations for the works at-issue in this action
9  are held by Michael Brandon Clement, and Michael Brandon Clement and Jonathan Petramala
10 jointly, but the Agreement offered here is only between Viral DRM and Michael Brandon
11 Clement. (*Compare* Dkt. No. 28-1 *with* Dkt. No. 39-3.) However, because Viral DRM filed the
12 Agreement with Petramala in the related action, *see, e.g.*, Case No. 24-746, Dkt. No. 41-3, and the
13 agreements are otherwise identical, the Court will consider it here, but ORDERS Viral DRM to
14 file the correct license(s) for this action within seven days of the date of this Order. As relevant
15 here, the copyright holder—referred to as a "Content Creator"—grants Viral DRM:

> 1. <u>Grant of Exclusive Agency Rights</u>. Content Creator hereby grants to VDRM the exclusive agency rights to manage and administer any content submitted by Content Creator to VDRM (the "Works"), including but not limited to the right to search for copyright infringements of the Works, to register copyrights for the Works with the United States Copyright Office; to authorize VDRM's attorneys to negotiate settlements, issue takedown notices pursuant to the Digital Millennium Copyright Act or otherwise file claims on behalf of the Content Creator in an effort to enforce the copyrights in and to the Works; Content Creator grants VDRM exclusive agency rights to display, store, transmit, and distribute Works as needed to fulfill obligations set forth in this agreement.

---

[2] Viral DRM requests leave to file the Agreement under seal because its agreements with the videographers "are confidential with its photographers, not only to protect Viral DRM's assets and terms, but also to protect the photographer's private information." (Dkt. No. 39.) A party seeking to file documents under seal "bears the burden of overcoming [the] strong presumption" in favor of public access to court records. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). "[C]ompelling reasons must be shown to seal judicial records attached to a dispositive motion." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir.2006); *see also Koninklijke Philips Electronics, N.V. v. KXD Tech., Inc.*, 347 F. App'x 275, 276 (9th Cir. 2009) (stating default judgment is "case dispositive"). While the Court agrees there are compelling reasons for sealing portions of the Agreement, this does not include the Agreement's title or paragraph 1 of the Agreement which is discussed in the publicly filed Clement Declaration. (Dkt. No. 40-1 at ¶ 3.) So, the motion to seal is GRANTED except as to these portions of the document.

(Dkt. No. 39-3 at ¶ 1; Case No. 24-746, Dkt. No. 41-3 at ¶ 1.)  The Content Creator otherwise retains all copyright and ownership rights in the work.  (*Id*. at ¶ 3.)

In *Minden*, the photography stock company "entered into agency agreements with its contributing photographers under which the photographers authorized Minden to license and sell certain photographs to third parties." *DRK Photo*, 870 F.3d at 983-84 (citing *Minden*, 795 F.3d at 999–1000).  "Importantly, in those licensing agreements, the photographers agreed to appoint Minden 'as sole and exclusive agent and representative with respect to the Licensing of any and all uses of [specified photographs].'" *DRK Photo*, 870 F.3d at 984 (quoting *Minden*, 795 F.3d at 1000).  "The key to determining whether Minden's agency agreements conferred a nonexclusive or exclusive license [] was not whether the photographers retained some fractional right but instead that the photographers promised 'that Minden, *and only Minden*, will have the power, as the photographers' licensing agent, to authorize third parties to reproduce, distribute, and display the photographs.'" *Id*. (quoting *Minden*, 795 F.3d at 1005) (emphasis in original)).

The Agreement here gives Viral DRM the "exclusive agency right to manage and administer any content."  (Dkt. No. 39-3 at ¶ 1; Case No. 24-746, Dkt. No. 41-3 at ¶ 1.)  Managing and administering content is not among the exhaustive list of exclusive rights which confer ownership under 17 U.S.C. § 106.  The Agreement provision giving Viral DRM "the exclusive agency rights to display, store, transmit, and distribute Works *as needed to fulfill obligations set forth in this agreement*," also does not confer exclusive ownership rights.  (Dkt. No. 39-3 at ¶ 1; Case No. 24-746, Dkt. No. 41-3 at ¶ 1 (emphasis added).)  Giving Viral DRM the rights necessary to enforce the videographer's copyright, is not the same as the exclusive right to "authorize third parties to reproduce, distribute, and display the photographs" required to have standing to bring a copyright infringement action.  *Minden*, 795 F.3d at 1005; *see also Silvers*, 402 F.3d at 884 ("The right to sue for an accrued claim for infringement is not an exclusive right under § 106.").  Unlike the agreement in *Minden*, the Agreement does not give Viral DRM the exclusive right to authorize third parties to reproduce, distribute, and display the copyrighted video.

Accordingly, Viral DRM is ORDERED TO SHOW CAUSE as to how it has standing to bring the copyright infringement claims at issue here including its standing to bring claims under

17 U.S.C. §§ 512(f), 1202(a), (b).  Viral DRM shall file a written response to this Order by January 6, 2025.

Within seven days of this Order Viral DRM shall file the correct licensing agreement(s).

Viral DRM's administrative motion to seal is GRANTED IN PART and DENIED IN PART as set forth in this Order.  (Dkt. No. 39.)

This Order disposes of Docket No. 39.

**IT IS SO ORDERED.**

Dated: December 9, 2024

_____
JACQUELINE SCOTT CORLEY
United States District Judge