1

2

3

4                        UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    VIRAL DRM, LLC,                          Case No.  3:24-cv-00733-JSC

8                 Plaintiff,                  **ORDER DENYING MOTION FOR
                                              DEFAULT JUDGMENT AND**
9          v.                                 **DISMISSING ACTION FOR LACK OF
                                              STANDING**
10   ANTON SHUBSTORSKY,
                                              Re: Dkt. Nos. 31, 41
11                Defendant.

12

13         Plaintiff Viral DRM LLC brings copyright infringement and related claims against

14   Defendant Anton Shubstorsky alleging he downloaded and copied Viral DRM's copyrighted

15   materials from YouTube, and then re-uploaded infringing versions of its copyrighted media

16   content to his YouTube channel WAHR. This is one of several related copyright infringement

17   actions. *See* Case Nos. 23-4300, 23-5045, 23-5594, 23-5977, 23-6261, 23-6598, 24-731, 24-739,

18   24-746, 24-747. After Defendant failed to respond to the Complaint, Viral DRM moved for entry

19   of default, which the Clerk granted, and now moves for entry of default judgment. (Dkt. Nos. 25,

20   31.[1])  At the hearing on Viral DRM's motion for default judgment, the Court raised an issue

21   regarding Viral DRM's standing to bring the copyright infringement claims and directed Viral

22   DRM to submit a copy of its license with the copyright holders. (Dkt. No. 38.)  After reviewing

23   Viral DRM's response, the Court issued an Order to Show Cause (OSC) as to Viral DRM's

24   standing to bring the copyright infringement claims at issue here.  (Dkt. No. 41.)

25         Viral DRM has filed the exact same OSC response in each case—without any citations to

26   the record or even tailoring the responses to the facts of the particular case.  *See* Case Nos. 23-

27   _____

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

1    4300, Dkt. No. 112; Case No. 23-5045, Dkt. No. 78; Case No. 23-5594, Dkt. No. 75; Case No. 23-

2    5977, Dkt. No. 61; Case No. 23-6598, Dkt. No. 56; Case No. 24-731, Dkt. No. 39; Case No. 24-

3    733, Case No. 24-739, Dkt. No. 42; Case No. 24-746, Dkt. No. 49; Case No. 24-747, Dkt. No. 42.

4    Viral DRM's response fails to demonstrate it has standing to bring the claims here.  Thus, for the

5    reasons set forth below and in its prior OSC, the Court DENIES the motion for default judgment

6    and DISMISSES this action.

**DISCUSSION**

8       Viral DRM is "a syndicator of award-winning videographic content created by talented

9    videographers." (Dkt. No. 1 at ¶ 14.) According to the Complaint, Viral DRM is "affiliated" with

10   WXChasing LLC, "a video production company that creates some of the videographic Works that

11   Viral DRM syndicates and licenses," and Live Storms Media LLC, "a licensing broker of video

12   content owned by or exclusively licensed to Viral DRM and WXchasing."  (*Id*. at ¶ 15.)  Viral

13   DRM alleges it "was the exclusive licensee of the Works at issue in this case" and it "registered

14   the Works at issue in this case with the Register of Copyrights pursuant to 17 U.S.C. § 411(a)."

15   (*Id*. at ¶¶ 38, 39.)  The Registration Certificates, however, show that five of the works at issue are

16   registered to "Michael Brandon Clement" and the other work is registered to "Michael Brandon

17   Clement" and "Jonathan Petramala" jointly. (Dkt. No. 28-1.)

18      According to Mr. Clement's declaration in support of the motion for default judgment, he

19   is a principal and one of the owners of Viral DRM LLC. (Dkt. No. 31-2 at ¶ 1.) Mr. Clement

20   attests "[a]ll the works are exclusively licensed to Viral DRM for distribution and syndication

21   pursuant to written agreements that provide Viral DRM with the necessary rights to sue for the

22   infringements at issue in this case." (*Id*. at ¶ 8.) Following the hearing on the motion for default

23   judgment, Viral DRM filed its "Exclusive Management Agreement" purportedly with the

24   videographer holding the copyright.  (Dkt. No. 39-1.)  But in what has been a common practice in

25   this action, Viral DRM only submitted one Agreement—the one with Clement and not also the

26   one with Petramala.  Viral DRM has since filed the additional Agreement and a response to the

27   Court's Order to Show Cause as to its standing to bring the claims here.  (Dkt. No. 42-1; Dkt. No.

28   45.)

United States District Court
Northern District of California

2

United States District Court
Northern District of California

**A.      Copyright Infringement under Section 501(b)**

Section 501(b) of the Copyright Act specifies who has standing to sue for infringement: "The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the [registration] requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Section 106 sets forth an "exhaustive list" of those exclusive rights. *Silvers v. Sony Pictures Entm't., Inc*., 402 F.3d 881, 887 (9th Cir. 2005) (en banc) (citing 17 U.S.C. § 106). These include:

> the rights "to do and to authorize" others to do six things with the copyrighted work: to reproduce the work, to prepare derivative works based upon the work, to distribute copies of the work, to perform the work publicly, to display the work publicly, and to record and perform the work by means of an audio transmission.

*Minden Pictures, Inc. v. John Wiley & Sons, Inc*., 795 F.3d 997, 1002 (9th Cir. 2015) (quoting 17 U.S.C. § 106). In *Minden*, the Ninth Circuit held "either an assignment (which transfers legal title to the transferee) or an exclusive license (which transfers an exclusive permission to use to the transferee) qualifies as a 'transfer' of a right in a copyright for the purposes of the Act." *Minden*, 795 F.3d at 1003 (emphasis in original). In contrast, a "'nonexclusive license' does not constitute a 'transfer of copyright ownership' and therefore cannot confer standing to assert an infringement claim." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 983 (9th Cir. 2017) (citing 17 U.S.C. § 101).

According to the Agreements between Viral DRM and Clement and Viral DRM and Petramala, the copyright holders—referred to as a "Content Creator"—grants Viral DRM:

> 1.  <u>Grant of Exclusive Agency Rights</u>.  Content Creator hereby grants to VDRM the exclusive agency rights to manage and administer any content submitted by Content Creator to VDRM (the "Works"), including but not limited to the right to search for copyright infringements of the Works, to register copyrights for the Works with the United States Copyright Office; to authorize VDRM's attorneys to negotiate settlements, issue takedown notices pursuant to the Digital Millennium Copyright Act or otherwise file claims on behalf of the Content Creator in an effort to enforce the copyrights in and to the Works; Content Creator grants VDRM exclusive agency rights to display, store, transmit, and distribute Works as needed to fulfill obligations set forth in this agreement.

(Dkt. No. 42-1 p. 3 at ¶ 1, p. 10 at ¶ 1.)  The Content Creator otherwise retains all copyright and ownership rights in the work. (*Id*. at ¶ 3.)

In response to the Court's OSC, Viral DRM circularly argues "[t]he grant of 'exclusive

United States District Court
Northern District of California

1   agency rights' in the agreements between videographers and Viral DRM are sufficient to appoint

2   Viral as exclusive owner of at least one of the § 106 rights and provide Viral with standing to sue"

3   because in order to "fulfill its responsibility to 'manage and administer any content'" Viral DRM

4   "must be empowered to 'display, store, transmit, and distribute Works as needed to fulfill

5   obligations set forth in this agreement.'" (Dkt. No. 45 at 4-5.)  That Viral DRM believed its

6   licensing agreements would allow it to bring the copyright infringement claims before the Court

7   does not confer standing under Section 501.  Statutory standing cannot be willed into existence.

8   In this case, it is a matter of contract and it exists or it does not.  As the Court previously noted:

> Giving Viral DRM the rights necessary to enforce the videographer's copyright, is not the same as the exclusive right to "authorize third parties to reproduce, distribute, and display the photographs" required to have standing to bring a copyright infringement action. *Minden* [*Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1005 (9th Cir. 2015)]; *see also Silvers* [*v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 884 (9th Cir. 2005)] ("The right to sue for an accrued claim for infringement is not an exclusive right under § 106."). Unlike the agreement in *Minden*, the Agreement does not give Viral DRM the exclusive right to authorize third parties to reproduce, distribute, and display the copyrighted video.

15  (Dkt. No. 41 at 4.)  Accordingly, under binding Ninth Circuit precedent, Viral DRM lacks

16  standing to bring a copyright infringement claim under Section 501(b).

### B.    DMCA False Counternotices under Section 512(f)

18      Viral DRM's second claim for relief alleges Defendant violated the Digital Millennium

19  Copyright Act ("DMCA"), 17 U.S.C. § 512(f), by submitting false counternotices in response to

20  Viral DRM's takedown notice.

21      While the copyright registrations in this case indicate the authors and copyright claimants

22  are either Michael Brandon Clement, or Michael Brandon Clement and Jonathan Petramala

23  jointly, many of the takedown notices represent the copyright owner is "WxChasing LLC" for

24  whom Michael Clement lists himself as "Executive Director of Content."  (*Compare* Dkt. No. 28-

25  1 at 3-13 *with* Dkt. No. 28-1 at 3-4, 7-10.)  According to Clement's supplemental declaration in

26  support of default judgment, he is the "principal and owner of Viral DRM" and the CEO of

27  WXChasing LLC and "Viral DRM is affiliated with WXchasing LLC."  (Dkt. No. 40-1 at ¶ 1.)

28  But the record does not include a license agreement between Clement and WXChasing—the

4

1   license agreements in the record are between Clement and Viral DRM and Petramala and Viral

2   DRM.  (Dkt. No. 42-1.)  For the one non-registered work for which a counternotification is

3   attached (https://www.youtube.com/watch?v=ICQx3BYV_QQ), the corresponding takedown

4   notice reads as follows:

5

6

7

8

9

10

11

12

13

14

15

16



17  (Dkt. No. 28-1 at 5.)  It thus appears Clement is acting on behalf of WXChasing in claiming a

18  DMCA violation on behalf of WXChasing for a work owned by Mr. Timmer.  The record,

19  however, does not include a license agreement between Mr. Timmer and WXChasing.  Instead,

20  Mr. Timmer has submitted a declaration in response to the OSC wherein he attests he has an

21  agreement with Viral DRM.  (Dkt. No. 45-4 at ¶ 4 (reciting language identical to that quoted

22  above in Paragraph 1 of Clement's Agreement with Viral DRM).)

23       Section 512(f) authorizes the "copyright owner or copyright owner's authorized licenseet"

24  to obtain damages for material misrepresentations by the alleged infringer to the online provider.

25  17 U.S.C. § 512(f).  Because the record is confusing and does not establish who the copyright

26  owner or any authorized licensee is for the Works at issue, Viral DRM has not demonstrated it has

27  standing under Section 512(f).  As a threshold matter, the Amended Complaint does not actually

28  identify the Works at issue for each claim, including the Section 512(f) claim.  And neither the

1    license agreements, the videographer declarations, nor the OSC response specifically identify the

2    Works at issue and/or the videographer associated with any particular Work; instead, they refer to

3    the "Works" and the "videographer," generally.  For example, the videographers have each

4    submitted generic declarations attesting "I am an extreme weather videographer and

5    cinematographer. The copyrighted work at issue in this case is an extreme weather video I filmed

6    and created."  (Dkt. No. 45-3, Clement Decl. at ¶ 1; Dkt. No. 45-4, Trimmer Decl. at ¶ 1; Dkt. No.

7    45-5, Timmer Decl. at ¶ 1.)   Nor is there any clarity as to the relationship between the different

8    "affiliated" entities—Viral DRM, WXChasing, and Live Storms Media—to whom the

9    videographers might have licensed their work.  To further complicate things, Viral DRM's

10   response to the OSC indicates "[s]ince this case was filed, Viral DRM's status as a partner with

11   L[ive Storms Media] in the syndication and distribution business underwent a change" and

12   because of "disagreements" between Clement and Brett Adair, the manager of [Live Storms

13   Media]" Mr. Adair has assigned his interest in Viral DRM to Clement.   (Dkt. No. 45 at 2-3.)

14        On this record, it is impossible to unravel the web of connections between all the entities

15   and individuals here and determine the relationship between the entities and individuals involved

16   with the copyrighted works at issue.  Viral DRM has thus not demonstrated its standing to bring a

17   claim under Section 512(f).

18        **C.    Removal and Misrepresentation of CMI under Sections 1202(a), (b)**

19        Viral DRM's 17 U.S.C. §§ 1201, 1202 claims allege the CMI watermarks identify the

20   Works as the property of Live Storms Media. (Dkt. No. 1 at ¶ 67.)   Under 17 U.S.C. § 1203, [a]ny

21   person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate

22   United States district court for such violation."  For the reasons discussed above and the lack of

23   clarity regarding Live Storms Media's relationship with Viral DRM, the videographers, or the

24   Works at issue, Viral DRM has not demonstrated it has standing to bring a claim regarding the

25   removal of Live Storms Media's watermark from the Works.

26                                           ***

27        Accordingly, Viral DRM's motion for default judgment is denied and this action is

28   dismissed for lack of standing.  To the extent Viral DRM now seeks leave to name the

United States District Court
Northern District of California

1    videographers as "nominal Plaintiffs," it is unclear what this even means.  (Dkt. No. 45 at 6.)   In

2    support, Viral DRM cites a Supreme Court case from 1897 discussing in whose name a wrongful

3    death action should be brought.  *See Stewart v. Baltimore & O.R. Co.*, 168 U.S. 445, 449 (1897)

4    (describing the person in whose name a wrongful death suit is brought a "nominal plaintiff.").

5    When considering whether to grant leave to amend, the Court considers five factors: "bad faith,

6    undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has

7    previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th

8    Cir. 2011). "Although a district court 'should freely give leave [to amend] when justice so

9    requires,' the court's discretion to deny such leave is 'particularly broad' where the plaintiff has

10   previously amended its complaint." *Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d

11   502, 520 (9th Cir. 2013) (quoting Fed. R. Civ. P. 15(a)(2); *Miller v. Yokohama Tire Corp.*, 358

12   F.3d 616, 622 (9th Cir. 2004)).  Viral DRM has previously been granted leave to amend and has

13   been afforded several opportunities to clarify its claims and the evidence in support of its claims.

14   Each successive filing raises more questions than it answers. It is impossible to tell whether this is

15   sloppiness or something nefarious, but the Court has expended tremendous resources trying to

16   figure it out and has given Viral DRM chance after chance to clarify the record, but each response

17   only muddies the record.   Accordingly, the Court in its discretion denies leave to amend.

### CONCLUSION

19        For the reasons stated above, the Court DENIES the motion for default judgment and

20   DISMISSES this action given Viral DRM's failure to demonstrate standing to bring the copyright

21   infringement and related claims at issue here.

22        This Order disposes of Docket No. 31.

23        **IT IS SO ORDERED.**

24   Dated: March 13, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California